FLANNIGAN v. ALTHOUSE, WHEELER & CO. ET AL.

1. **Evidence:** VALUE OF PROPERTY SOLD ON EXECUTION: APPRAISEMENT. The appraisement of property sold under execution is not competent evidence to prove its value. in an action by one claiming to be the owner of the property to recover its value.

2. ———: OFFICER'S RETURN ON EXECUTION. The return of an officer on an execution constitutes the best evidence of what property was levied on thereunder.

3. **Instruction:** MORTGAGE: FRAUD. An instruction relating to the fraudulent transfer and mortgage of personalty considered and held erroneous under the evidence.

*Appeal from Howard Circuit Court.*

MONDAY, JUNE 21.

THE plaintiff is the holder of a chattel mortgage executed upon certain personal property by one John Murray. The defendants Althouse, Wheeler & Co. are judgment creditors of one Davis & Thomas. As such they caused an execution to be issued and levied upon the mortgaged property, claiming that the same was the property of their judgment debtors Davis & Thomas, and that if they ever sold it to Murray, the plaintiff's mortgagor, the sale was fraudulent and void.

The plaintiff served upon the officer who levied the execution notice of his claim, and thereupon the defendants executed and delivered to him an indemnifying bond, and he proceeded and sold the property. This action is brought to recover the damages which the plaintiff alleges that he sustained by the sale. There was a trial by jury and a verdict and judgment were rendered for the plaintiff. The defendants appeal.

*H. T. Reed* and *C. M. Brooks*, for appellants.

*H. C. McCartney*, for appellee.

ADAMS, CH. J.—I.   To prove the value of the property
sold the plaintiff offered in evidence the appraisement at-
tached to the sheriff's execution.   The defend-
ants objected to the appraisement as incompetent
and immaterial, but the court overruled the ob-
jection, and the appraisement was read in evidence.

*1. EVIDENCE: value of property sold on execution: appraisement.*

In our opinion it was not proper to prove the value of the
property in this way.   The appraisement, it is true, is pro-
vided for by law, but not for such a purpose.   We think that
the value should have been proven by witnesses introduced
upon the stand who should first show themselves competent
to testify upon such a subject, and even then it would have
been the right of the defendants to test their judgment by a
proper cross-examination.

It is claimed by the plaintiff that there was other compe-
tent and undisputed evidence showing that the value of the
property was not less than the amount of the verdict, but we
fail to discover such evidence.

II.   The appraisement introduced in evidence included
certain sheep valued at $45.   The return upon the execution
did not show that any sheep were levied upon or
sold.   To prove, however, that the officer took
sheep from Murray's farm, he was examined upon the stand
and was asked, "How many sheep did you take from his
farm?"   The defendants objected to the testimony as not the
best evidence.   The court overruled the objection, and the
witness answered, "I think there were thirty.   Four were
afterwards left at Searle's.   I don't know whether they were
ever returned to Murray or not."

*2. ———: officer's return on execution.*

The defendants were liable for only such property as was
seized by the officer by virtue of his execution.   Now section
3043 of the Code provides that where an execution is levied
"an exact description of the property at length, with the date
of the levy, shall be indorsed upon or appended to the execu-
tion."   This indorsement, constituting the officer's return, be-

comes the evidence as to what property is covered by the levy. Herman on Executions, section 236; *Le Barron v. Taylor*, 53 Iowa, 637. The defendants' objection to the officer's testimony we think was well taken, and should have been sustained.

III. The court gave an instruction in these words: "It is incumbent upon the plaintiff to show by a preponderance of evidence that John Murray owned the property mortgaged, and that the mortgage was executed by John Murray to him, and it is incumbent upon the defendants to establish the fraudulent combination to defraud creditors. If fraud is established between Davis & Thomas and Murray, then the plaintiff must show that he took the mortgage without notice of the fraud." The defendants claim that the last part of the instruction is erroneous, because it carries a plain implication that if the plaintiff took his mortgage without notice of the fraud he would hold the property as against the creditors of Davis & Thomas, even though the property belonged to them and had been fraudulently transferred to Murray.

3. INSTRUCTION : mortgage : fraud.

The defendants averred in their answer that the mortgage was without consideration, and the evidence tended strongly to show that the consideration was not such as would constitute the plaintiff a bona fide purchaser for value in such sense as to give him a superior equity as against the defendants. If he took the mortgage to secure an antecedent debt and gave no extension, as the jury, we think, might have found, then it was sufficient for defendants to merely establish the fraud. *Ryan v. Chew*, 13 Iowa, 589. As the instruction tended to preclude the jury from this consideration it appears to us that it cannot be approved.

REVERSED.